JOHN KING (ANNA KING, EXECUTRIX, SUBSTITUTED PLAINTIFF,) *vs.* THE FOUNTAIN WATER COMPANY.

Third Judicial District, Bridgeport, April Term, 1903.
BALDWIN, HAMERSLEY, HALL, ROBINSON and CASE, Js.

A written agreement between the defendant and riparian proprietors above and below its dam, provided that the defendant should thereafter have the right to set back the water on the land of the upper proprietor "to the extent the same can be flowed by said dam as now constructed;" and the right to divert in its existing water

pipes, or in others to be laid from said dam, "all the water it shall need" to supply its customers. *Held : —*

1. That the limitation of flowage was not intended to measure the amount of water which the defendant might divert from the lower proprietor, but was inserted as a protection to the landowner above the dam; and therefore the riparian owner below, having assented to, and having received compensation for, the diversion of all the water of the stream, if necessary for the defendant's purposes, could not justly complain of an increase in the height of its dam, which was required in order to enable it to supply its customers with water for domestic and public uses.

2. That the defendant might, however, be liable for discharging into the stream and into the mill-pond of the lower proprietor, the foul and stagnant water which had accumulated in the bottom of the defendant's reservoir.

Argued April 14th—decided June 4th, 1903.

ACTION for diverting the water of a stream to the injury of plaintiff's mill-privilege, and for fouling the stream above his premises, brought to the Superior Court in New Haven County, where a demurrer to the complaint was overruled (*Prentice, J.*) and the cause was afterwards tried to the court, *Thayer, J.;* judgment for the plaintiff upon the first count for $50, and upon the second for $5, and appeal by the defendant. *Error in the judgment upon the first count ; no error in the judgment upon the second count.*

*William H. Williams*, for the appellant (defendant).

*Verrenice Munger* and *Robert L. Munger*, for the appellee (plaintiff).

HALL, J. The defendant company was duly incorporated, prior to 1872, for the purpose, among other things, of furnishing the inhabitants of West Ansonia with an abundant supply of pure water and ice for public and domestic use. For this purpose, in July, 1872, the defendant constructed a dam and reservoir across a stream which contributed to the supply of a water-power and mill-privilege below, and laid pipes in the streets of West Ansonia for the diversion and distribution of the water of said stream. In December, 1872,

the plaintiff, who owned the land above the defendant's dam, the owners of the mill and mill-privilege below (of whom the plaintiff, now the sole owner thereof, was one), and the defendant company, executed a written instrument by which—after reciting that in pursuance of the object of its incorporation the defendant had constructed said dam, that it would set back the waters of said stream upon the plaintiff's land, that the defendant had "laid pipes in the highway and streets" for conducting water, and that the water of said stream "when permitted to flow through said pipes for distribution" would, "to the extent the same shall flow through said pipes, be diverted from said stream" to the injury of the water-power below—the said parties, for the purpose of determining the matters in controversy between them and ascertaining the damages, as stated in the words of the submission, "for all trespasses and injuries that are proved, and for injury that may occur hereafter by the flowing of the land of said John King, and all damage that may occur to said proprietors of said saw-mill and land below said dam by reason of said diversion of water hereafter," mutually agreed in part as follows: "Said The Fountain Water Company, its successors and assigns, shall forever hereafter have the right to dam and set back the water on the land of said John King to the extent the same can be flowed by said dam as now constructed; . . . said Water Company shall forever hereafter have the right to divert in said water pipes, or others to be laid from said dam, all the water that it shall need to supply any useful demand they may have on the line of their present water pipes, or whatever water pipes may be laid in extension or continuance of the water pipes. All question of damages, compensation, or pay to any of said parties, . . . for any and all acts past, present, and future, and for all rights herein given and granted, are hereby left to the final arbitrament, award, and determination of " (naming three persons).

In accordance with the terms of such submission, the arbitrators named awarded to the plaintiff $300, which, in the language of the written award, was "for all rights and privi-

leges granted by John King to said Fountain Water Company, and in consideration of all damages past caused by any workmen, agents, and contractors, and for all damages that will hereafter occur to said John King on the land of said King, near said dam, by the continuance of said dam, and the flowage of water over the land of said King." The arbitrators also awarded $300 to the owners of said mill and mill-privilege " for damages that will hereafter occur or which have occurred " to said named owners, " by reason of the diversion of the water of the stream crossed by said dam, through the pipes of said water company, for all purposes for which said water company can use said water."

The terms of said award were complied with by said parties.

When the dam was constructed it was supposed by all parties that the reservoir thus formed was large enough to furnish and store a sufficient supply of water for the defendant's purposes ; but, as the demand for water increased with the growth of the town, the capacity of the reservoir and the flow of the stream proved to be insufficient, and in 1879 and again in 1888, in order to supply the useful demand for water by the inhabitants of said town, it became necessary for the defendant to increase the capacity of the reservoir by raising the height of the dam, so that the water of the stream, which, at certain seasons of the year, had flowed over the dam and to the plaintiff's mill, should be held back and stored for the defendant's use. The dam was thus raised about eight feet above its original height.

While such raising of the dam flooded no land above, excepting what was then owned by the defendant, and diverted no more water of the stream than was necessary to supply the proper demands of the people of the described district, it held back and stored, for the defendant's use, a considerable quantity of water which, after the construction of the original dam and before such raising thereof, had, at certain seasons of the year, flowed over the dam, and to the plaintiff's mill, and had been useful to the plaintiff's mill-privilege. The depriving the plaintiff of the use of the water so held back

and ponded by the raising of the dam is the injury described in the first count of the complaint, and for which the trial court awarded damages to the plaintiff.

This judgment is apparently based upon the conclusion that, by the terms of the written agreement of submission and award thereunder, the quantity of water which the defendant may divert from the mill-privilege below is not to be measured by the needs of the company in order to supply the proper demand of the public, but by the height of the dam as originally constructed. Such is not the correct construction of the language of these instruments.

It is true that the contemplated injury by the flooding of the land above the dam was, by the terms of the submission and award, clearly described as that which would result from the use of the then existing dam. As such injury would necessarily be increased by any raising of the dam, its height would naturally be limited by the language of the submission and award. But the contemplated injury to the owners of the water-power below was the diversion of the water of the stream so that it would not flow to their saw-mill, and nowhere, either in the submission or award, do we find any statement or claim that the quantity of water which would be so diverted, or the extent of the injury which they would suffer, would be affected by the height of the dam, or any language showing any intention upon the part of such owners in making the submission, or of the arbitrators in making the award, that the dam was to be limited to its height at that time. We should expect to find no such limitation, if the real purpose of the agreement of submission, as between the owners of the mill-privilege and the defendant, was to enable the latter to use the entire stream if required for its purposes; since, if the defendant was to have the right to divert, if necessary, the entire stream, it could make no difference to the owners below whether it did so by raising the dam, or by some other means.

The language of the recital of the agreement of submission describing the contemplated injury to the mill-owners, as that which would result to their water-power by the diversion of

the water of the stream, to the extent that such water would flow through the conducting and distributing pipes laid in the streets; the statement in the submission that it was the purpose of the parties to have determined all damage that might occur by reason of said diversion of water (no diversion having been before spoken of except that caused by the flow of the water through the pipes laid in the streets); the provision that the defendant should have the right to divert "in said water pipes . . . " all the water it should need to supply any useful demand it might have; and the words of the award that the sum to be paid to the mill-owners was for damages that had occurred, or would thereafter occur to them, " by reason of the diversion of the water of the stream crossed by said dam through the pipes of said Water Company for all purposes for which said Water Company can use said water,"—show sufficiently clearly that it was not the intention of the owners of the mill-privilege below the dam to limit the water which the defendant might divert, to the quantity which could be ponded or held back by the dam, as it was originally constructed, even though it may then have been supposed by all parties to be sufficient for the present and future uses of the company.

It cannot be claimed that the water to be diverted was intended to be limited to such quantity as would flow through the pipes which had been laid at the time of the award, as it is expressly provided in the submission that the defendant may divert the water by laying other pipes to the dam, and by extending or continuing existing pipes, in order to supply any useful demand.

From the language of the submission, and of the award which was accepted and performed by all the parties, read in the light of the known purpose for which the Water Company was organized, and which it was endeavoring to carry out, it is apparent that the owners of the mill-privilege agreed that the defendant should have the right to use all the water of the stream in question, which it might need in order to furnish its customers with an abundant supply of water and ice for public and domestic use, and that in accepting the

sum awarded them they received payment for all damage that might result to them from the necessary diversion by the defendant of the entire water of the stream.

As the defendant has only diverted such water as was necessary for its lawful purposes, and as the manner of diverting it is a proper one, causing the plaintiff no injury beyond that for which he and his grantors have already received compensation, he was not entitled to damages upon the first count of the complaint.

Upon the second count of the complaint the trial court awarded the plaintiff $5 damages for an injury sustained by him from the act of the defendant in discharging into the stream and mill-pond below the dam, by means of a blow-off-pipe at the bottom of the dam, foul and stagnant water which had accumulated in the bottom of the. defendant's reservoir.

This judgment does not appear to be erroneous. It may fairly be understood from the finding that the trial court held that, while it was necessary, in order to enable the defendant to furnish pure water to its customers, that the foul water which at times accumulated at the bottom of the dam, should in some way, and at the times and in the quantities stated in the finding, be let off from the defendant's reservoir, yet it was not reasonably necessary that it should be discharged into the stream and mill-pond below in the manner it was on the occasion in question.

Since judgment must be for the defendant upon the first count, it is unnecessary to consider the questions raised by the defendant's demurrer to that count.

The judgment upon the first count is erroneous and is reversed. There is no error in the judgment upon the second count.

In this opinion the other judges concurred.